## 27261. WARE *v.* SWIFT & COMPANY.

DECIDED MARCH 17, 1939.  ADHERED TO ON REHEARING, MARCH 30, 1939.

*Jo Johnson,* for plaintiff.

*Smith, Smith & Bloodworth, William H. Smith,* for defendant.

STEPHENS, P. J.   This is a claim for compensation under the workmen's compensation act (Ga. L. 1920, p. 167), as amended by the act approved March 30, 1937 (Ga. L. 1937, p. 528).   It seems that the entire record before the Department of Industrial Relations has been brought to this court, and it shows the following:

The claimant, George Ware, on November 11, 1930, while employed in the fertilizer plant of Swift & Company, had a fall and received injuries enumerated by the examining physician as a fracture of right clavicle, contusion of right side of head, right shoulder, and both hips.   The employer and employee made an agreement for the payment of compensation for temporary total disability, which was approved by the Department of Industrial Relations on December 30, 1930.   In March, 1931, at the instance of the claimant, the commission ordered a hearing on the question whether compensation should be continued.   On May 15, 1931, the commissioner who heard the case found that the claimant was totally disabled for work and "that his present condition is due to the injury," and directed the employer to continue compensation. In August, 1931, the employer requested a hearing on the ground of a change in the condition of the claimant.   In September, 1931, the claimant requested a hearing.   A hearing was had in December, 1931, when the commissioner denied additional compensation and dismissed the case.   In August, 1933, the claimant requested

a hearing on the ground of change in condition, injuries not presented and award not paid. A hearing was had and in December, 1933, the commissioner hearing the case refused further compensation and dismissed the claim. The claimant requested a review by the full board and in March, 1934; the findings of the commissioner were approved and the award denying additional compensation was affirmed. The claimant appealed to the superior court on various grounds, and the judge who heard the appeal sustained the same and remanded the case for further hearing. The employer appealed to the Court of Appeals and the judgment of the superior court was reversed on May 1, 1936. In April, 1937, the claimant requested a hearing on the ground of a change for the worse in his condition as last adjudged. A hearing on this last application was had in May, 1937, before a deputy commissioner. On August 30, 1937, another director rendered an award to the effect that there had been no change in the condition of the claimant since the two previous hearings, and further compensation was denied. The claimant applied for a review by the Industrial Board on numerous grounds. On September 27, 1937, the full board approved the findings of the director, affirming his award denying additional compensation. The claimant appealed to the superior court on various grounds, and the judge of that court who heard the case approved the findings of the Industrial Board and denied the appeal on February 22, 1938. The claimant, on March 5, 1938, filed in the superior court a petition for "review, amendment, and reversal" which motion for rehearing as well as the appeal was denied by the judge on July 22, 1938. The claimant filed his bill of exceptions assigning error on the order and judgment of the superior court in its decree of February 22, 1938, and in not sustaining the appeal and in overruling the petition for review.

■ Counsel for the claimant made the objection that the evidence was heard by a deputy, and that the award was made by a director who did not hear the evidence. He cites the amendment to the compensation act of 1937 (Ga. L. 1937 pp. 528, 533). This act in amending the Code, § 114-702, provided that deputies shall have the same power as directors and that deputies may make awards. In this amendment occurs the following language: "A deputy so hearing a case shall make the award just as would a

director," etc. This amendment does not make it mandatory that the deputy hearing the case must render the award, but the intention was simply to give him the power to do so. An award is not void because it was made by a director on evidence heard and taken down before a deputy.

■ ■ There have been several adjudications between this employer and the employee as to the latter's right to compensation. The employer contends that these former decisions are conclusive as against the right of the claimant to further compensation. This makes it necessary to examine each of these awards to determine this question. The first hearing was before Commissioner Whitaker in April, 1931. In his decision on May 15, the commissioner found that the claimant was totally disabled for work, that his condition was due to the injury, and that he was entitled to compensation as for temporary total disability, same to continue during disability. In the hearing which resulted in these findings it appeared from the record that the employer resisted the claim on the ground that the condition of the claimant was not the result of the original injury, but that his seeming paralysis was imaginary and simulated. A doctor testified for the employer that he put the claimant in a hospital and "by suggestion and massage in five days time he was moving his right arm and walking and showed a great deal of improvement without anything but suggestion as to the right side of the body." The doctor felt, according to his testimony, that the claimant did not have any organic pressure on the brain causing the paralysis, but that it was "a functional neurosis—he had it in his mind that he couldn't move that side."

The department's physician, who examined the claimant on the request of the commissioner, rendered an opinion that the claimant was suffering from psychoneurosis or hysterical paralysis, that his condition was provoked by the injury, and that the claimant was totally incapacitated for competitive work, the period of incapacity not being determinable at that time. This doctor reiterated his conclusions in his testimony before the commissioner, and was examined by counsel for the employer on the specific question whether the claimant was a malingerer who was shamming paralysis. In illustrating his opinion this doctor said: "He is under the dominion and control of the sympathetic or subconscious nervous mechanism which is a pathological influence coming into his mentality

and there are influences just as malignant to the health in the nervous mechanism as if it was a cancerous tumor in his stomach." The decision of Commissioner Whitaker awarding compensation was not appealed from by the employer who continued for some time to pay the compensation awarded. Afterwards, the employer having ceased to pay, the claimant asked for a hearing. It appears that the employer also had previously requested a hearing on the ground of change in condition.

The hearing took place in October, 1931. It was then contended by the employer that the claimant had improved so much that he was able to go to work, that the employer had offered the claimant a job, and he refused to take it. The testimony of the doctors showed improvement in the claimant's condition. One doctor testified that the claimant had recovered the use of his right arm and right leg. The examiner doctor said that the claimant was able to get about without aid, but the condition of the right arm remained the same as on previous examinations. The commissioner who rendered the award gave as his opinion that under the evidence it was a case of malingering due to claimant's desire to obtain compensation, and, instead of being one of traumatic neurosis, was one of compensation neurosis. The commissioner then found from the evidence and circumstances that there had been no change in condition which would authorize additional compensation, and that the evidence and circumstances did not justify an award of compensation. This award was made on December 23, 1931. In July, 1933, Mr. Whitaker, one of the directors of the board, requested the department's physician to make another examination of the claimant. In the report of this doctor it was stated that the claimant was observed to walk clumsily, leaning to the right side and dragging the right leg along, that the right arm hung limp by the side, that the general physical examination disclosed the same findings as reported on two previous occasions, namely, that there was no physical explanation for the complaints and disabilities presented, that the nerve reactions were essentially normal, and there were no atrophies or other changes which would be present if this condition was organic in type, that "when first seen in April, 1931, the claimant presented the same findings except to a greater degree that are present on this visit to the office," that "there had been some improvement following treatment so

that the symptoms virtually cleared up and this claimant was seen at one time able to use the right arm and leg in an essentially normal manner," but when examined in August, 1931, the symptoms had partially recurred with the findings at that time as are presented on this examination. The doctor's opinion was that there had been no change in the claimant's condition since his last report, and that "the findings in this case again confirm the diagnosis previously made, namely an hysterical paralysis of the right arm and to a lesser degree of the right leg with numbness of the right side of the body. This condition is associated with a degree of malingering, in my opinion, although such conditions grow out of comparatively simple injuries and are in effect disabilities resulting from injury. The claimant in his present state is incapacitated for competitive work."

The director who made the award expressed the impression that the claimant was malingering for compensation, and the finding was that there had not been any change in his condition and compensation was refused and the claim dismissed. This award being affirmed by the full board the claimant appealed to the superior court and the judge hearing the appeal sustained the appeal and set aside the finding and remanded the case. The employer brought the case to the Court of Appeals which reversed the judgment of the superior court and affirmed the decision of the Industrial Board. *Swift & Co.* v. *Ware,* 53 *Ga. App.* 500 (186 S. E. 452). In this decision the court held that a former award against the claimant which was not appealed from brought the case to an end "except for a change in condition." Compensation was denied because there was evidence that the paralysis then under investigation did not result from the injury for the reason that there was medical opinion that the claimant was feigning paralysis; but the decision finally rested upon the fact that there had been no change in the condition of the claimant since the last hearing. The defendant relies on the case of *Ætna Life Ins. Co.* v. *Davis,* 172 *Ga.* 258 (157 S. E. 449). This decision is not in point because on the first hearing before the Industrial Commission the commissioner found as a fact that Davis had no permanent injury as a result of the accident which he had sustained while in the employ of Haverty Furniture Company, that he had recovered from the injury sustained in the accident, and that there was no connecting link between the injury

sustained in the accident and the pains complained of by the plaintiff. On the contrary, in the present case, the initial adjudication was in favor of the claimant. The commissioner decided that the claimant was totally disabled, that his condition was due to the injury, and that he was entitled to compensation as for temporary total disability, same to continue during disability. It appears that in the *Davis* case the Industrial Commission reversed its former award on the ground that there had been a change of condition, then the superior court reversed this decision of the commission; then the Court of Appeals reversed the decision of the superior court, and then the Supreme Court by a divided court, reversed the decision of the Court of Appeals.

The compensation law should be liberally construed so as to effect the purposes intended by the legislature in its enactment. It provides that the Department of Industrial Relations either on their own motion or on application of any party in interest on the ground of a change in condition may at any time review any award or any settlement made between the parties and on such review may make an award ending, diminishing, or increasing compensation previously awarded or agreed upon. Code, § 114-709. This is a liberal provision. There is no limit whatever upon the number of applications which either the employer or the employee may make on the ground of a change in condition. It is possible under this law for the employer to be harassed with repeated applications from the same claimant, but it is equally true that the employer may harass the beneficiary of compensation by repeated applications to have it discontinued. If this be a defect in the law it is a matter for legislative consideration. In view of this provision of the compensation act it would not seem proper, as an original proposition, to apply to the law the technical rules which have grown up under the name of res judicata. The fact that any later hearing on the ground of a change in condition is spoken of and called a "review" should be given some significance. How can there be a review if the department is to be controlled or hedged about with a former decision? Under this power it is not unreasonable to hold that the directors can correct any mistake made in a former award, and change the amount of compensation to accord with such correction. This is virtually what was done in this case at the instance of the employer, because in the first award

it was found that the claimant had a bona fide case of paralysis, and in a later award his condition was thought to be pretended and fraudulent.

It might well be that the medical history of the case after the award of 1933 might show that the doctors who thought the claimant was pretending to be paralyzed were mistaken in their opinion, and that the claimant suffered during all the years (with the exception of a short period of improvement) from a real paralysis which was caused by the injury received in his employment. Can it be said that the board, having unlimited power to review its awards, is without power to correct a grave error such as this which has become manifest from a change in the condition of the claimant during the lapse of time subsequent to the erroneous award? In the present case the judge of the superior court who heard the appeal from the decision of the Industrial Board said he was convinced that injustice had been done the claimant, that he resolutely refused to accept the conclusion that the claimant was wilfully faking his condition with a view to receiving compensation, but that he could not set aside the findings of the Industrial Board because the same were conclusive on issues of fact. But there are some exceptions to this rule, and the superior court is authorized to set aside the order or decree of the directors if it be found that " (4) There is not sufficient competent evidence in the record to warrant the directors in making the order or decree complained of." Code, § 114-710.

To ascertain whether there was sufficient competent evidence to warrant the order or decree which is complained of in this case, the evidence must be considered to see whether there had been a change in the condition of the claimant, and whether the condition passed on in this last hearing was attributable to the original injury sustained in the employment. The claimant testified that he was paralyzed in his right arm and right leg, that he had had trouble ever since he was hurt, and "it is getting worse and worse," that he had trouble working his tongue from side to side. Members of his family testified that he was paralyzed in his right side and could not use his right arm or right leg, that his condition had become worse lately. Another witness testified that in the latter part of 1933 the claimant was walking with a stick but he could walk pretty good, he didn't have to drag himself like he does

now, and that he now has no physical use of the right arm or right leg. Other witnesses said that he was worse "lately." Another witness testified that the claimant was not "able today to perform any physical services of value." The only physician who testified in the case said that he had been doing a general practice for forty years, that he had examined the claimant the day before he testified, that he found the claimant's hand and arm disabled since the injury which he reported, that he had the loss of eyelid use, and couldn't move his tongue from side to side, and cervical muscles of his neck on each side seemed to be more or less drawn and his head was drawn bi-laterally, that is, down and to the right side, that his entire right arm and hand were completely paralyzed, cold and clammy, that his speech and articulation were hesitant and clipped, and that his spine appeared more or less irregular, curved, and drawn, that he could drag his leg but it was nearly completely paralyzed. In this hearing the employer offered no evidence. The evidence for the claimant was uncontroverted as to the cause of his paralysis and as to the fact that there had been a recent change in his condition. The only question is whether the former awards in this case were sufficient to overcome all the testimony which was presented in his behalf at the last hearing. On the question whether there had been any change in his condition since the hearing of 1933 the testimony or findings as to what his condition was in 1931 or in 1933 was not competent on the question of what his condition was in 1937.

The evidence in the hearing now being reviewed was uncontradicted that there had been a decided change in the condition of the claimant. Several items testified to by the only medical witness showed material differences between the last and the former hearings, especially as to the condition of his eyelids, tongue and spine. Besides, on the two hearings which resulted adversely to the claimant the employer contended that the claimant was able to work and was feigning paralysis, which contention was sustained. But on the last hearing there was no testimony which would sustain such a contention. A change from ability to work to inability to work would seem to be a change of condition. Therefore the finding of the commissioner that there had been no change in the claimant's condition was totally without competent evidence to support it, unless the commissioner was correct in holding that the

claimánt was a malingerer, that he was feigning his paralysis, and that the same thing was true of the claimant at the time of the former hearing or hearings, the theory being, once a malingerer always a malingerer. However, this theory can not supply the lack of competent evidence, and there was no evidence at all showing or even hinting that the claimant's condition in 1937 was a fraudulent effort to obtain compensation by pretending to be paralyzed. Likewise, there is no evidence which would disassociate the claimant's condition in 1937 from the original injury as its cause. Of course, it was competent for the employer to introduce testimony similar to that used in other hearings to show that the paralysis was caused by a "compensation neurosis," but the employer did not do so, and the commissioner did not base his decision on such a theory but based it on the fact that there was no paralysis but only a pretense of it.

It thus appears that there was not sufficient competent evidence in the record to warrant the director or directors in making the order or decree complained of. The judge of the superior court erred in not setting the award aside and remanding the case, and in afterwards overruling the claimant's "petition for review and the amendment thereto."

*Judgment reversed. Felton, J., concurs. Sutton, J., dissents.*